Good morning, Your Honor. May it please the Court. I'm Marcus Borosow. I'm here on behalf of Appellant Raymond Ghaloustian. This case involves two separate violations of the Fifth Amendment and two separate admissions at trial of statements that were- Two separate violations of Miranda, yes? Yes, Your Honor. Because Miranda is not coextensive with the Fifth Amendment. Fair, Your Honor. They were violations of Miranda, the first of which, of course, was after Mr. Ghaloustian was held at gunpoint, violently arrested, undisputedly arrested, and then, in the government's own phrasing of it and in the agent's own testimony about it, he was questioned about the drugs that he was caught in possession of and made statements. And those statements were subsequently admitted at trial. Now, that's the August arrest in this case. And if the Court didn't even reach the October arrest, that violation alone would already merit reversal of Mr. Ghaloustian's convictions because there is no way the government can demonstrate, and they certainly haven't here, that that violation of his Miranda rights during the August arrest and the subsequent admission of those statements and the argument by counsel emphasizing those statements- that he didn't know the gun was there. Those are the statements when he was questioned- Those are from the August. From August, correct. And then- Let's try to address the state- There's three statements that you say should have been suppressed. Yes, Your Honor. And let's assume for a moment that I agree with you that these were obtained in violation of Miranda. There doesn't seem to be any indication that they're involuntary, which is why I think the Fifth Amendment is not the argument. The argument's Miranda. They weren't coerced. I'm trying to figure out why they make a big difference in this case. He says, I forgot I had the gun on me or I found it. Not a defense to the prohibited possessor charge, is it? No, Your Honor. Okay, so- I think if he didn't know he possessed it- No, he knew he possessed it. He didn't say, I didn't know I possessed it. He said, I found it and, oh, I forgot I had it on me. I acknowledge that, Your Honor. He knew he possessed it. He knew he was a prohibited possessor. And so how did the statement prejudice him in any way? Those statements at the August arrest, those ones about the gun, primarily went to Mr. Galustian's credibility. His credibility about what? His credibility- They were used as a general attack on his credibility. But the problem is he said, I'm a con man, I'm a liar, I lie to the police all the time. If you believe he's telling the truth that he just found it, or if you don't believe he's telling the truth that he just found it, I'm not sure how that seriously bears on his credibility that all the drugs they found on him and his car on both occasions, he didn't know anything about them or they were for his personal use. I'm just not sure why that statement- You agree it makes no difference under prohibited possessor convictions? Those gun statements, yes. Okay. So your argument is, well, because the jury got to hear this outlandish explanation of why he had a gun on him, they probably didn't believe anything else he said. That's your argument, right? As to the gun statements, narrowly framed, that is. But the August arrest also involved- the most important statement from the August arrest was not about the gun. It was about the drugs. Right. And so I want to address that one, too, because here's my- there's three statements you challenged. I want to take them each up, because I think the issue in this case really is whether the error affected the verdicts or was harmless. As to that one, he says, these drugs- something like these drugs are for other people or something like that. Right? What's his statement in August? In August, he says, it's a few people smoked that. A few people smoked that. In the next arrest, which is in October, he's Mirandized. And they ask him about another large quantity of methamphetamine found in the car. And he says, it's for other people or something like that. That statement was appropriately admitted, wasn't it? I hesitate to concede that only because I know- I know, but you have a challenge. You have no Miranda argument about testing. Council below didn't reserve a challenge to that. We don't have a Miranda argument against that. But it's not even up on appeal before us. Right. So given that, and given that the quantities were about the same, do you really think a jury would have assumed that the large quantity that he had the first time, and there was an expert who said users don't have these small amounts of stuff, was affected by that statement given the fact that he later admits that he's carrying around drugs for other people? I do, Your Honor. And first, the statement at the October arrest is not an admission that he carries it around for other people. The very next thing he says is that these drugs are for him. It's two weeks' worth. And the court has said a couple of times that this was a large quantity. But both experts agreed this was less than a week's worth for a serious addict. And certainly, I don't think anybody disputes Mr. Galustine was a serious addict. The government attempts some to distinguish him, distinguish the fact of whether or not he had paraphernalia on him. But he had a long record of drug convictions and was a serious addict, and this was not a large quantity. So when you have two statements saying that multiple people could have smoked this methadone- I don't have a Miranda argument against this. Well, you don't make any argument against it. Right. I mean, I know it hurts to make any concession, but I guess you're not making any argument. It wasn't appropriately admitted. Right. But certainly, the government didn't at trial say you have this one statement when he's arrested in October. In fact, I don't even think they bring that statement up once, I believe, in their argument. The emphasis over and over is that you have multiple statements by him, and they focus specifically on the August- The fact that there was multiple statements makes this problematic. If it had just been one, then that would have been totally different. Well, the standard, of course, is whether this was harmless beyond a reasonable doubt. Is Miranda harmless beyond a reasonable doubt? Yes, Your Honor. If this court finds a violation of Miranda, then the standard is that the government has to demonstrate it was harmless beyond a reasonable doubt. Let's go to the third statement because I want to make sure we've covered all three, and I know you want to save a little time for rebuttal. The third statement is about who owns the purse, right? Correct. And he says, it's my wife's, so it's mine. And then at trial, he says it belongs to a friend. Even if the statement was obtained in violation of Miranda, they surely could have introduced it at trial to impeach his statement that it belongs to a friend, couldn't they? Well, Your Honor, I'm in a difficult position because the downstream effect of this Miranda violation was Mr. Galustian's decision to testify. Well, but I don't think, come on, he may have been entitled to testify, but once he testifies, they're surely entitled to say, gee, now you say X and before you said Y. So you really can't say, is your argument that once he decided to testify, they couldn't use this statement to impeach him? At that point, they could use his statement to impeach him, but of course, that's not how this trial played out. How do I know from this record that he decided to testify because of the Miranda violations? Well, his own testimony circles around explaining the statements that were obtained. Well, I understand, but he's entitled to take the stand. Well, we have to presume that he was forced to take the stand because of the Miranda violations. They've got a lot of evidence. I mean, you don't challenge the seizures. The seizures turn up a bunch of drugs. You may minimize them. You might say they're just for personal use, but the seizures turn up a bunch of drugs, some weapons, a whole bunch of other incriminating evidence. You don't challenge any of the seizures. So I'm not sure why I have to presume that he only took the stand because of the Miranda violation. Well, I think the court's framing of the evidence of trial is sort of its self-telling because the emphasis exclusively at trial was on the drug quantities and the statements he had made because there was no paraphernalia for sales, no baggies, no evidence that he had sold, no buyer, no records or text messages that would support indicates that he sold or shared. All of those things that are usually present in a distribution case. Well, but there were scales. I mean, you're saying that shouldn't have been admitted because they were in the purse. And, of course, there was expert testimony that users carry sales to avoid overdose as well. Right, but doesn't that hurt your argument? Because you were able to rebut that. The jury heard all that. I mean, your point is they never should have heard that there were scales in the first place. With respect to the scale, yes. They shouldn't have heard of the scale. And, of course, on harmlessness. Well, why shouldn't they have heard? That's what I'm having trouble with. If you don't challenge the seizures, they could have heard they found the scale in the purse, right? Right, but it was in his purse. Well, that's a separate issue. In other words, they were entitled to present the fact that in this car we found a purse that had a scale and drugs in it. Yes? Yes. Okay, what you're saying is he wouldn't have had to explain it but for the Miranda violation. It would have just gone unexplained. They just would have found in his car a purse with—because once he takes the stand to say it's not my purse, then it seems to me they're entitled to say, you know, well, here's all your conflicting statements about it. But they're going to learn about the scale and the drugs and everything else even if there are no statements, correct? Yes, but, of course, at trial they still have to attribute that purse and scale. Well, they found it in his car. They certainly can say we stopped him and in his car we found a purse with drugs and a scale in it. And they don't have to lay other foundations than that, do they? Well, and to admit it, no. But there were other people— Well, and to argue that it's obviously his because he's driving around with it. Well, he wasn't driving and there was another person in the vehicle along with a lot of things that plainly were not him. Clothes. But he was driving. If the scale were there, the government would be making all these arguments and then he'd still face the question of do I want to just leave it hanging out there or do I want to get up and deny it? So I don't think whether there's—and his statement wasn't admitted except they didn't use it except for impeachment, right? His statement that the purse was his, they did offer it affirmatively in their case. So it's a lady's purse found in the back of the car underneath a tarp, is that right? That's correct, Your Honor. As I understood your argument, it sounds like you're saying based on all of these rulings by the court on suppression of evidence, the defendant was sort of painted into a corner. The only way he could put forth his defense that I'm just a user, I may be illegally in possession of a gun, but it's not in furtherance of drug trafficking, he has to now testify. Is that right? Insofar as the court—yes, Your Honor, that is correct. The one area of harmlessness that I think is immensely important that is separate is that the jury had to rely upon the quantity of methamphetamine in the purse to find the 10-year mandatory minimum from the October arrest. And so attributing the purse to him was immensely important, and both sides leaned as best they could on the evidence that they had in the record. Now, of course, what we don't have in the record, unfortunately, is what the picture in the passport in the purse was. We know that the agent who found it saw that it was not Mr. Gloucestian, somebody else's passport is in the purse, and that it was a fake passport. That was what was obvious to the agent at the time. There was also evidence that Mr. Gloucestian was involved in counterfeiting identities. There was, Your Honor, but none of that evidence indicated that he was using pictures of other people in fake documents. I confess I'm not sure how that would have been of utility to him. I'd like to reserve two minutes for rebuttal. Thank you. Thank you. We'll hear from the government. Good morning, Your Honors, and may it please the Court, Susan Haar on behalf of the United States. This Court can affirm the jury's convictions based just on the overwhelming and unchallenged evidence in the case, because while there are some discrete pieces that are at issue on appeal, the vast majority of the evidence, as this Court has observed, from the trial is unchallenged. And when coupled with the limited nature of the statements at issue, this is a straightforward path to affirmance. So what's not in dispute is that this defendant was caught twice with a loaded gun literally in his pants. You have his prior felony convictions, two of which he was sentenced to over a year, plus the domestic violence misdemeanor. And it was completely undisputed and unchallenged that the interstate— But it's the distribution, I think, that he's focusing on, saying, I didn't have enough that would have, you know, suggested distribution. And I guess your—I mean, what's your response to that? Yes, so that was just to take care of the 922C counts. Yeah, he's not challenging the prohibited possessor conviction as close as I can tell. I don't know whether there's a waiver or just an absence of arguments, but I don't see anything in the brief challenging the prohibited possessor conviction. So move on to the— Right, so with respect to the 841 and the 924C counts, the unchallenged evidence is the defendant's repeated course of conduct, that in a short two-month span, he's caught twice, again, with the concealed loaded gun, the obliterated serial number on both, baggies of methamphetamine, and the quantities were substantial, so much so that in the October arrest, the post-Mirandize statement, with respect to just the two baggies on his person, it's 37 grams, he says that it's for four people. That's a direct admission of the 841 intent to distribute. It just requires— And let's assume, just for purposes of discussion, that the first statement at the August stop was obtained in violation of Miranda. Are you saying the second one cures the first? I think when conducting the harmlessness analysis, it renders that statement harmless because you have admission in the second instance of a similar quantity, that it is for four people, coupled with, again, the testimony of both separate officers stating that across both arrests, these were distribution quantities, that was consistent with the drug expert's testimony that a quarter of a gram is the average dose, so he is walking around with over a hundred. Am I wrong in remembering the record? I take it Mr. Galushian's main defense at trial was this is for my personal use, not for use of others. Correct. Could the statement at the first time, at the first occasion, even if obtained in violation of Miranda, be used to impeach that testimony? Yes, Your Honor, for the reasons— But it wasn't offered for that limited purpose, was it? It wasn't offered for that limited purpose. It was brought in in the case-in-chief, but in terms of looking at harmlessness, had that not happened in the case-in-chief, he would have taken the stand, he would have testified, and by testifying that all of the drugs that he had were only for him, then the impeachment value for a few people from the August arrest would have come in under the Harris case. So I think that would have— Well, he did take the stand. Yes, he did. But you introduced it in your case-in-chief for the truth of the matter. Correct. But the defendant's testimony, he was going to testify anyway. How do we know that? His decision to testify had nothing to do with the challenge statements because the core of his defense was that he was this huge consumer of methamphetamine and all the drugs he had were for him. He had to take the stand to explain that he used three to four grams a day. That has nothing to do with the statements at issue. So what you're saying is that if he didn't take the stand, these errors would be harmless because there would be no explanation on his part for why he had all these large amounts of methamphetamine. If he didn't take the stand, there would be no defense. There would have been— Well, he could have. I mean, there's a defense. It just wouldn't have been backed up by anything in the record. Correct, because even the— But that doesn't mean that he would have had to testify to the other issues and rebut the statements that the government put in. And I think that's also probative of the fact that he did not take the stand to rebut the statements because, in fact, if you look at him— Well, why does that matter why he took the stand? The fact is, by the time he took the stand, say he said they made a strategic decision and he had to take the stand and say, I'm a user, but that's all he was going to testify to. But then he's on the stand, and because the government has entered all this other evidence, he then has to address that. Well, I think opposing counsel's point was that but for the statements being introduced in the governance case in chief, he wouldn't have taken the stand. And your point is that absent taking the stand, he's got no explanation at all for why he has— Correct, and I think there's no dispute that by him testifying, he really— I mean, it became, at that point, harmless beyond all doubt. And he doesn't—it really wasn't about the statements. And he, on the stand, destroyed—essentially, he presented a highly implausible defense that was contradicted by the evidence, contradicted by his own contemporaneous statements, again, during the arrest. He admitted to being this career fraudster whose activities are based, in part, on pretending to be someone he's not. And I think that was made abundantly clear to the jury who soundly rejected this defense that he consumes 15 to 20 times what the average user uses, but then appeared, as he appeared in the videos, of a very healthy, robust physical appearance, good teeth, fine hair, fine skin. His demeanor was very coherent and logical. He didn't display— Are you arguing that there was no Miranda violation, or are you only arguing that any violation was harmless? I would submit on the briefing, Your Honor, with respect to the question of whether there was a Miranda violation, but I am certainly arguing both that it was harmless. You do agree that the question of whether Miranda was violated is a pretty— was a more difficult question for you, isn't it? I would agree with that, Your Honor. Do you have a different argument on the second stop than the first stop? With respect to harmlessness? With respect to Miranda. I mean, each of the—there were three different grounds that were briefed, and I think that the argument with respect to the October statement is probably the strongest in that it's part of that ongoing Terry stop, but all roads lead back to the harmless error. Because I must say I have more trouble with—I have great difficulty with your argument on the August stop. It doesn't matter if you convince us that the error was harmless, but it seems to me in the August stop this is pretty clearly a custodial interrogation. Yeah, and I agree, Your Honor, so I do think that the harmlessness is, again, the most direct path for this Court. The Court need not decide the issues of the Miranda violations, again, because it's not going to matter when you have evidence of this nature where it's overwhelming. What is the standard here? Does the government have to show that, assuming there was a Miranda violation, that it was harmless beyond a reasonable doubt? Yes, that is the standard. And taking out—even absent those statements, does the panel have confidence beyond a reasonable doubt that the jury would have reached the same argument? So what do we do if we think the statements would have been admissible but not for the truth of the matter? How does that factor into our harmless error analysis? I mean, I think that— I mean, in the real world it doesn't matter. The jury doesn't make that distinction anyway, but we're not allowed to do that. Sure, I guess I'm even taking it a step further. I'm presuming that even if the jury never heard the statements at all for its truth— That's your main argument. And I'm trying to figure out, well, let's assume I may not buy that, but I think the jury would have heard these statements anyway if properly handled because they would have been impeachment. Does that somehow factor into our analysis? I mean, it can factor in in the sense that it would just further bolster the jury's, again, very sound, clear rejection of the defendant's defense that he was this hardcore addict by further impeaching his credibility. But there was so many, plenty on that score with respect to his lies during the first arrest, to the officer's multiple times that he didn't have a weapon, his lies in the second arrest, that he had accidentally spray-painted over his license plate while painting the rims, that the car was registered to him or, you know, to someone else. He had a shifting story about that. And then, of course, during his testimony itself, the sort of, I think, a very devastating moment during the trial where he tried to pass off this pipe that he claimed, excuse me, an object that he claimed to be a meth pipe that he used constantly because he's such a heavy user, and it turned out that it was actually the plastic handle of a screwdriver. And so that just eviscerated his credibility. Adding the statements that were largely to, again, his credibility, I think, certainly wouldn't have helped him, but it doesn't move the needle. His credibility was shot. Can you address the possession of the firearm and furtherance of? Yes. I think... Because, obviously, he possessed the firearm. He was a prohibited possessor. There is no doubt he possessed illegal drugs. But how do we get to possession of the firearm and furtherance of in this case? Right. And I think there, you know, the standard, as was set forth in the jury instructions, is that it's about whether those guns were possessed to promote or facilitate the underlying drug crime. Okay. So what's the evidence that they were? There was undisputed... I mean, I think both experts acknowledged and explained that it's common... Drug dealers often carry weapons. Right. Common for drug dealers to have weapons that they needed to protect themselves, their stash, their proceeds. Is that sufficient? Let's assume there's no other evidence that the firearm was used in the furtherance of anything. Is that sufficient to get to the jury on that issue? That is sufficient, Your Honor. We commonly have cases where it's drugs and guns, and when you have them together, there's certainly an inference, and then you have evidence and testimony backing up the fact that that's the purpose. And here, you know, I think he tried to put on, again, an implausible defense that the guns were for some other purpose. And in certain respects, the government didn't even impeach that defense because it doesn't negate the required element here that it was facilitating the drug crime. I think the defense was more trying to attack the fact that there was no predicate drug crime to hack away at the 924C. Back to this court's evaluation of plain error. When we look at the error regarding the statements, do we do it in light of the other alleged errors, evidentiary errors that occurred in this case? In other words, it's not isolated. There are other claims of error. There are other claims of error, but I would argue that those claims are not meritorious. And so I do think there is room for, but assuming, you know, that the court found otherwise, there would be room to argue some kind of cumulative harm. But again, I think given what those other challenges are to extremely limited portions of the evidence that were largely non-material or, in fact, non-material. You haven't addressed the records that were introduced regarding his priors? Yes. So with respect to the certified conviction records, the objection at trial when they were being offered, these were the certified conviction records for the four predicates for the 922Gs. The objection was relevance. That was properly overruled. If you have a 922G count where the elements are about whether he had sustained the prior felonies and whether he had knowledge that he was this prohibited person, that was going to come in. If he'd objected to the non-conviction-related items on the exhibits, that would have been an appropriate objection, wouldn't it? I think that would have been, Your Honor. They're not relevant at all. Yes, but the problem is that there was no such objection. He didn't object to certain pages. Does he have to parse it that way? I believe he does. So part of the exhibit is not. . . The judge instructed the jury about how to use these. But I'm not sure that. . . I'm a little uncomfortable when somebody says, object relevance, that he has to say, I'm only objecting to this portion of the exhibit, not to that portion of the exhibit. I think that. . . Well, for the first point, I don't think it ultimately matters because, yes, it was harmless. There was plenty of evidence, including the defendant's own testimony, that he was a serial criminal. And so a rogue page that said he failed to appear for a court hearing wasn't going to be the thing that caused the jury to disregard the jury instructions and improperly convict him. But putting ourselves in the shoes of the district judge, the defense counsel who had the exhibits ahead of time knew what that was going to be. So you're saying the judge was never alerted that there was a partial problem as opposed to just the entire exhibit being. . . Correct. And for this to say that it was error, it would be essentially to tell the district judge that he should have sua sponte, redacted, portions of this otherwise complete certified conviction record that was directly relevant. And this. . . I'm not casting blame here, but this strike me sort of strange that the government wouldn't have, before introducing these records, noticed that they had some extraneous matter on them and only offered the record of conviction. I would agree that as a matter of best practices, that could have been done, but I don't think it's to the level here where it would be some sort of an error and certainly not one that caused harm. I have about 20. . . Oh, no, I'm all. . . No. I see my time has expired. Is there any. . . Okay. All right. Thank you. We'll give rebuttal time. Thank you. I'd like to begin with the Miranda issues and then I'll switch to the conviction records for a moment. Before your honors, it's the government's burden to prove beyond a reasonable doubt that any violation was harmless. That means it's their burden here to prove beyond a reasonable doubt, insofar as they intend to rely on Mr. Galustian's testimony that he would have testified. No, I'm not sure that's the case. Cite me a case that says that. Well, your honor, I confess there are two cases you have to combine to get there, but Harrison, by the Supreme Court, says that they can't rely on a defendant's testimony if that testimony was given after a constitutional violation. No, let's assume that they're not arguing that his testimony makes the error harmless. They're not arguing that his testimony makes the error harmless. They're arguing that the other evidence makes the error harmless. Well, I disagree with the court's framing of their argument. They rely very heavily on the fact that he testified and what he testified to. Well, let's assume for a moment I don't analyze his testimony in the harmlessness analysis. So what case tells me that I still have to say he wouldn't have taken the stand? Well, if you don't rely on his testimony in the harmlessness analysis, then I don't think you reach whether or not he testified. See, my problem in this case is that once you take his testimony out of the case, we've got what appears to be the world's easiest conviction because there's no explanation for this amount of drugs. No, your honor, both experts testified that this was less than $100 worth of drugs. But one expert testified that this was much more than you would expect a user to have. And these large quantities are found in his possession, and you can't challenge the seizures, within two months of each other. Your honor, the same expert, of course, acknowledged that it could have been less than a week's worth. Somebody did a good job on cross-examination. That's a reasonable doubt. That's why it affects the verdict. But if I can shift for a moment to the conviction records, I see my time has expired. I just wanted to emphasize that even arguing before the court today, the government is relying on a character argument, saying he's a serial criminal, and that was clear to the jury. That's why these conviction records were so important. Well, but you never... Nobody below said to the judge, Judge, of course these conviction records can come in because they're part of the government's burden of proof with respect to prohibited possessor. There was no stipulation as to that point. He didn't contest it, but he didn't stipulate it. But you ought to keep off those portions that also show he's a bail jumper and never shows up for court. Nobody ever raised that objection to the district judge. They didn't explain that objection, your honor. And the courts already are, obviously, probing to what extent he had to preserve that. But I'd submit that it was adequately preserved. Thank you, your honor. Thank you. Thank you to both counsel for your arguments in the case. The case is now submitted, and the court will take a brief five-minute recess and we'll come back. All rise. This court stands in recess for five minutes.
judges: HURWITZ, NELSON, Kane